**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| FRANK LEWIS DAVIS, | No. ED CV 14-873-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 8, 2014, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on May 27, 2014, and May 29, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 13, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 8, 1956. [Administrative Record ("AR") at 176, 181.] He has past relevant work experience as a house repairer. [AR at 21, 55.]

On May 17, 2011, plaintiff protectively filed an application for a period of disability and DIB, and an application for SSI payments, alleging that he has been unable to work since January 1, 2008.[1] [AR at 12, 174-80, 181-89.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 12, 138-39.] A hearing was held on November 19, 2012, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 37-70.] A vocational expert ("VE") also testified. [AR at 59-70.] On November 27, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2008, through the date of the decision. [AR at 12-23.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7.] When the Appeals Council denied plaintiff's request for review on February 24, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] Plaintiff's SSI application indicates an alleged onset date of January 12, 2009. [AR at 181.]

2

conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date.[2] [AR at 14.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "leg length discrepancy, degenerative disc disease, patellofemoral syndrome, and degenerative changes." [Id.] The ALJ also determined that plaintiff's medically determinable impairments of "adjustment disorder vs. depression, history of

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. [AR at 14.]

alcohol abuse, history of methamphetamine abuse, and history of cocaine abuse," do not cause more than minimal limitation in plaintiff's ability to perform basic mental work activities, and are therefore nonsevere. [Id.] At step three, the ALJ determined that plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listings. [AR at 15.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work except that he can stand and/or walk for four hours of an eight-hour workday, and can frequently kneel, stoop, crouch, crawl, balance, and climb. [AR at 16.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a house repairer as actually performed. [AR at 21.] Alternatively, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "dump truck driver" (Dictionary of Occupational Titles ("DOT") No. 902.683-010). [AR at 22.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2008, through November 27, 2012, the date of the decision. [AR at 23.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to properly evaluate plaintiff's mental impairment; and (2) found plaintiff capable of performing his past relevant work, and other work, despite the findings of the consultative examiner, Ana Maria Andia, M.D. [Joint Stipulation ("JS") at 4.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

A.   **THE SEVERITY OF PLAINTIFF'S MENTAL IMPAIRMENT**

Plaintiff contends that the ALJ failed to properly consider the medical evidence, specifically the August 18, 2011, evaluation of the consultative examiner, Dr. Andia, allegedly finding plaintiff limited to simple one- or two-step instructions, and assessing a Global Assessment of Functioning ("GAF") score of 60.[4]  [JS at 4, 7-8.] As a result, plaintiff argues that the ALJ erred when he found that plaintiff's alleged mental impairment was nonsevere. [Id.]

1.   **Legal Standard**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

/

2.   **Weight Given to the Opinions of Dr. Andia and Dr. Loomis**

On August 18, 2011, Dr. Andia completed a Comprehensive Psychiatric Evaluation of plaintiff. [AR at 303-10.] Relying on Dr. Andia's evaluation, the ALJ determined that plaintiff had

---

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. 2000) ("DSM-IV"). A GAF score in the range of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g, few friends, conflicts with peers or co-workers)." Id. at 34. The most recent edition of the DSM "dropped" the GAF scale, citing its "conceptual lack of clarity" and "questionable psychometrics in routine practice." Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2012) ("DSM-V").

only mild limitation in activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation of extended duration. [AR at 15 (citing AR at 303-10).] He concluded, therefore, that plaintiff's mental impairment was nonsevere as it did not cause more than mild limitation in plaintiff's ability to perform basic mental work activities. [AR at 14-15.]

Specifically, with regard to plaintiff's activities of daily living, the ALJ noted Dr. Andia's findings that plaintiff has difficulty completing household tasks due to pain; dresses, bathes, and takes care of his hygiene independently; and drives, goes fishing, gardens his yard very slowly, and waters plants. [AR at 15 (citing AR at 306).] With regard to social functioning, the ALJ found that plaintiff has "an excellent relationship with his friends and family," and goes fishing with friends. [Id. (citing AR at 306).] Noting that plaintiff admitted to Dr. Andia that he had no difficulty making decisions, the ALJ also found plaintiff had mild limitation in concentration, persistence, and pace. (Id. (citing AR at 306).]

In her report, Dr. Andia also stated the following as a result of her evaluation of plaintiff: plaintiff exhibited a depressed mood and his affect was congruent with his thought content; he expressed feelings of worthlessness; he was unable to perform serial sevens, but could do serial threes and math calculations correctly; and he could spell 'world' forwards and backwards. [AR at 307.] She diagnosed plaintiff with adjustment disorder with depressed mood; alcohol dependence, allegedly in full, sustained remission; and methamphetamine dependence, allegedly in full, sustained remission. [AR at 308.] She assessed a GAF score of 60, indicating moderate symptoms or difficulty functioning. Dr. Andia opined that plaintiff is able to understand, remember, and carry out simple one- or two-step job instructions; is mildly limited in his ability to do detailed and complex instructions due to his depressive symptoms; is able to relate and interact with coworkers and the public; may be mildly affected in his ability to maintain concentration, persistence, and pace due to his depressive symptoms; is able to accept instructions from supervisors; may be mildly limited in his ability to maintain regular attendance in the work place and perform work activities on a consistent basis due to his depressive symptoms; and is able to perform work activities without special or additional supervision. [AR at 309.] She also noted that plaintiff's mental condition "is expected to improve in the next twelve months with active treatment"

1 such as "resuming an antidepressant and psychological counseling to help him cope with his
2 chronic pain." [Id.]

3       The ALJ observed that plaintiff had received minimal treatment for depression, primarily
4 limited to prescription psychotropic medication prescribed by his family physician; did not attend
5 therapy, see a psychiatrist, or receive treatment from any other mental health clinician; and there
6 was no objective evidence to support a conclusion that plaintiff's depression causes more than
7 mild limitations in any functional domain. [AR at 20.] The ALJ also noted Dr. Andia's findings
8 regarding plaintiff's diagnoses; mental status examination results; GAF score; ability to
9 understand, remember, and carry out simple one- or two-step job instructions, relate and interact
10 with coworkers and the public, and perform work activities without special supervision; and his mild
11 limitations with detailed and complex instructions, and ability to maintain regular attendance and
12 perform work activities on a consistent basis. [Id.] Based on the foregoing, the ALJ agreed with
13 Dr. Andia that the record and objective evidence do not support a finding of a severe psychiatric
14 condition. [Id.] Because Dr. Andia's findings rested on her own "complete examination" of plaintiff,
15 including obtaining a history from plaintiff and conducting a mental status examination [AR at 303,
16 306-08], Dr. Andia's opinion constituted substantial evidence and the ALJ was entitled to rely on
17 that opinion to find that plaintiff was no more than mildly limited in his ability to perform basic work
18 activities. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of an examining
19 physician constitutes substantial evidence where it rests on her own examination of the claimant).

20       The ALJ also gave "significant weight" to the August 25, 2011, opinion of the non-examining
21 state agency psychological consultant, K. J. Loomis, D.O., who also determined that plaintiff's
22 mental impairments were nonsevere. [AR at 21; see also AR at 71-76.] Dr. Loomis reviewed the
23 medical record, including the report of Dr. Andia and records from plaintiff's treating sources. [AR
24 at 71-74.] Dr. Loomis noted that on September 13, 2010, plaintiff had been diagnosed with
25 depression and given a prescription for Prozac by his treating source, but that at the time plaintiff
26 saw Dr. Andia, he reported to her that he was no longer taking medication for depression. [AR
27 at 75-76 (citing AR at 271, 309).] Dr. Loomis indicated agreement with Dr. Andia's finding that
28 plaintiff's mental impairment was nonsevere. [AR at 76.]

The ALJ noted that Dr. Loomis' opinions were "supported by the record and corroborated by [plaintiff's] testimony."[5] [AR at 21.] He observed that plaintiff did not seek therapy or treatment from a mental health clinician, Dr. Andia's mental status examination was "normal overall," and plaintiff "demonstrated in his testimony that he had no more than mild limitations in any functional domains." [Id.]

Plaintiff complains that the ALJ gave too much weight to Dr. Loomis' opinion, as the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." [JS at 7 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1999)).] He asserts that the "totality of the evidence" proves that plaintiff "suffers from more than a slight mental impairment to satisfy the *threshold element* of a severe mental impairment at step two of the sequential evaluation process." [Id.] The Court does not agree.

The ALJ was entitled to rely on the opinion of Dr. Loomis, as state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Soc. Sec. Ruling ("SSR")[6] 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Additionally, reports of a non-examining medical expert "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, Dr. Loomis reviewed the record, including the report completed by Dr. Andia, as well as plaintiff's treatment notes that were in the record relating to his treatment for depression, and concluded, as did Dr. Andia, that plaintiff's mental impairment was

---

[5] Plaintiff does not contest the ALJ's finding that his subjective complaints were "less than fully credible." [AR at 17.]

[6] SSRs do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

not severe. [AR at 75-76.] Thus, Dr. Loomis' opinion constitutes substantial evidence as it was supported by Dr. Andia's opinion and consistent with it.

In an attempt to bolster his assertion that the medical evidence supports a severe mental impairment, plaintiff references the following: (1) an October 3, 2011, progress note from the local county hospital where he received treatment "for his ailments," indicating that plaintiff needed a refill for his depression medication [JS at 6 (citing AR at 326)]; (2) August 2011 records that are "noteworthy to mention" because they "make clear [plaintiff] was having a difficult time scheduling appointments with the county hospital" [JS at 6-7 (citing AR at 329)]; and (3) an October 9, 2012, note in the record that indicates plaintiff "was still informing his physician about his battle with depression." [JS at 7 (citing AR at 405).]

These documents, however, fail to provide any evidence of a *severe* mental impairment -- in fact, they tend to do the opposite. The October 3, 2011, note indicated nothing more than plaintiff's need for a refill on his medication [AR at 326] -- there was no indication of a change in plaintiff's mental status or that any change was needed in the dosage of his medication. [Id. ("Cont. Fluoxetine 20 mg").] The August 12, 2011, note appears to relate to plaintiff having a "difficult time" scheduling appointments through his insurance ("IEHP" [Inland Empire Health Plan]) for his referrals to Dr. Andia and the spine clinic. [AR at 329 ("Pt. having difficult time scheduling appointments, called IEHP, spoke [to] Marlene to redirect referrals: 878544 and 878539").] This note does not appear to relate in any way to plaintiff's complaints of depression. Indeed, a follow-up note on August 22, 2011, indicated that authorizations were faxed to the approved providers and, on August 24, 2011, another note indicated that plaintiff had already seen Dr. Andia. [Id.] Finally, the October 9, 2012, progress note actually indicates that plaintiff is "doing well on Wellbutrin/Zoloft," and added that plaintiff's "[g]irlfriend has noticed [a] difference." [AR at 405.]

The Court notes that with the exception of Dr. Andia and Dr. Loomis, there is no other opinion evidence in the record relating to plaintiff's alleged mental impairment and any functional limitations as a result of that impairment. Indeed, this lack of treatment evidence was another reason given by the ALJ for finding plaintiff's alleged mental impairment to be nonsevere. [AR at 20.] In giving weight to the opinions of these physicians, therefore, the ALJ did not reject the

opinion of a treating or other examining physician. These opinions are consistent with each other and are not contradicted by other evidence in the record.

Based on the foregoing, substantial evidence supports the opinions of Dr. Andia and Dr. Loomis, and the ALJ's finding at step two that plaintiff's depression was nonsevere was a rational interpretation based on substantial evidence. Ryan, 528 F.3d at 1198 ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld") (internal quotation marks and citation omitted). Accordingly, there was no error.

### 3. GAF Score and One- or Two-Step Instructions

Plaintiff complains that the ALJ gave too little weight to Dr. Andia's assessed GAF score of 60. [JS at 7.]

An ALJ has no obligation to credit or even consider GAF scores in the disability determination. See 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in [the Commissioner's] mental disorders listings."); see also Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."); [see also supra note 4.] Here, there is evidence that the ALJ did consider the assessed score, noting that it indicated "moderate symptoms or difficulty functioning." [AR at 20.] The ALJ also considered the totality of Dr. Andia's evaluation and the record evidence, all of which failed to provide any evidence that plaintiff had a severe mental impairment or any more than mild work-related limitations. [AR at 20.] Accordingly, there was no error in the ALJ's implicit finding that this GAF score, which the Court notes is on the borderline of the "mild" range,[7] did not constitute evidence that plaintiff's mental impairment was severe.[8]

---

[7] A GAF score of 61 is indicative of "**[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . .**" DSM-IV at 34.

[8] Indeed, plaintiff provides no authority indicating that a GAF score of 60, without more, would be indicative of a severe mental impairment. [See, e.g., JS at 7.]

11

1  Plaintiff also characterizes Dr. Andia's opinion regarding plaintiff's ability to perform simple one- or two-step instructions as a functional *limitation*. [JS at 12 ("The omission of *simple one and two step instructions* from the residual functional calculus is the omission of a limitation.").] He claims that the ALJ erred in omitting this as a severe impairment at step two, and from his "residual functional calculus." [JS at 12-13.] He argues that the ALJ should have included this finding in the ALJ's hypothetical questions to the VE. [JS at 7.] This argument is unpersuasive.

Dr. Andia's evaluation included taking plaintiff's history and conducting a complete mental status examination. [AR at 303-10.] While she did opine based on her evaluation that plaintiff "*[i]s able to* understand, remember, and carry out simple one or two-step job instructions" [AR at 309 (italics added)], this was not all she found -- she also found that plaintiff was only "mildly limited in his ability to do detailed and complex instructions," maintain concentration and attention, persistence, and pace, and maintain regular work attendance. [Id.] In short, Dr. Andia did *not* find that plaintiff was *limited* to only simple one- or two-step instructions: she found him able to fully understand, remember, and carry out one- or two-step job instructions, *and* able to do detailed and complex instructions with only mild limitation.

Based on the foregoing, there was no error in the ALJ's omission of a limitation to one- or two-step instructions in his hypothetical to the VE, as no such limitation was found to exist. For the same reason, there was no error in the ALJ's omission of this "limitation" in his "residual functional calculus."

/
/
/

**B.    PAST RELEVANT WORK**

Plaintiff argues that the ALJ's RFC assessment for medium work "does not fit with the congruent statement of Dr. Andia that limited [plaintiff] to simple one- and two-step instructions." [JS at 13.] He argues that the ALJ failed to give specific and legitimate reasons for rejecting this opinion of Dr. Andia. [Id. (citing Lester, 81 F.3d at 830-31).] He also contends that Dr. Andia's limitation to simple repetitive tasks conflicts with the VE's identification of occupations requiring anything more than a reasoning level of 1, including the two occupations identified by the VE -- house repairer and dump truck driver -- which are reasoning level 4 and reasoning level 3 occupations respectively. [JS at 13-15 (citations omitted).] He concludes, therefore, that "the weight of the authority in this District would preclude the identified jobs because of Dr. Andia's limitation of simple one and two-step job instructions." [JS at 16 (citations omitted).]

As the Court concluded above [see Discussion supra Part V.A.3], after considering plaintiff's allegations of mental impairment, including the opinions of Dr. Andia and Dr. Loomis, the ALJ properly found at step two that plaintiff's mental impairment was nonsevere. And, because Dr. Andia's finding regarding plaintiff's ability to follow detailed and complex instructions was not any more than a mild functional limitation, and her finding regarding plaintiff's ability to do simple one- or two-step instructions was not a limitation at all, the ALJ was not obligated to either provide a specific and legitimate reason for rejecting these alleged "limitations," or to include these "limitations" in his hypothetical to the VE. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) (for the testimony of a VE to be considered reliable, the hypothetical must include all of the claimant's limitations, physical and mental, "s*upported by the record"*) (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995) (emphasis added)); see also Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986).

There was no error.

/

/

/

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative, remand, is denied; and (2) the decision of the Commissioner is affirmed.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 26, 2015

　　　　　　　　　　　　　　/s/ Paul L. Abrams
　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE